**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BUZZARDS BENCH, LLC and | § | Case No. 20-32391-11 |
| BUZZARDS BENCH HOLDINGS, LLC, | § | |
| | § | Joint Administration Requested |
| Debtors.[1] | § | |
| | § | |

**EMERGENCY MOTION FOR (A) INTERIM AND FINAL ORDERS AUTHORIZING
USE OF CASH COLLATERAL PURSUANT TO SECTION 363(C) AND (B)
SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

**EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 7, 2020, AT 1:00 P.M. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002.** **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.**

**IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS +1 (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER. JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691.**

**PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION. THE INTERNET SITE IS WWW.JOIN.ME. PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.**

**ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING". THE CODE FOR JOINING THIS HEARING BEFORE JUDGE JONES IS "JUDGEJONES". THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER. PLEASE COMPLETE THE NAME AND CLICK "NOTIFY."**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Buzzards Bench, LLC (7898) and Buzzards Bench Holdings, LLC (4637).

4817-3865-3115.4

Buzzards Bench, LLC ("Opco") and Buzzards Bench Holdings, LLC ("Holdco"), the above-captioned debtors and debtors in possession (collectively the "Debtors"), for their Emergency Motion for (A) Interim and Final Orders Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 (the "Motion"), respectfully represent:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a), 361, 362, 363, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 4002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the United States Bankruptcy Court for the Southern District of Texas Procedures for Complex Chapter 11 Cases (the "Complex Case Procedures").

## PROCEDURAL HISTORY AND BACKGROUND

4. On April 30, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors remain in possession of their property and are managing their business as debtors in possession.

6. No trustee, examiner or official committee has been appointed.

7. Opco currently owns and operates 128 natural gas producing wells across approximately 47,000 net acres (73 square miles) located in the Buzzards Bench portion of the Greater Drunkards Wash Field located in Carbon and Emery Counties Utah (the "Field"). On a

2

typical day, Opco's wells produce approximately 10.5 MMcf of gross natural gas. As of December 1, 2019, Ryder Scott estimated the Field's proved developed producing ("PDP") reserves were 50.2 net Bcf, with a PV10 value of $28.2 million.

8. In addition, Opco owns and operates a natural gas processing plant (the "Plant") that provides dehydration, compression and carbon dioxide (the "CO2") treatment services for wells owned by Opco and for third parties. The Plant processes approximately 60 MMcf of natural gas per day, approximately 50 MMcf of which is for ConocoPhillips. The Gas Plant strips CO2 from the natural gas stream and the CO2 is sold to Messer, an industrial product company.

9. The Debtors' operating revenue for the twelve-month period March 2019 through February 2020 was approximately $9.6 million.

10. A more detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Van Levy in Support of Chapter 11 Petitions and First Day Motions*, filed in connection herewith.

## THE TERM LOAN AGREEMENT

11. Opco, as Borrower, and Holdco, as Guarantor, are parties to that certain Senior Secured Term Loan Agreement dated February 22, 2019 (the "Loan Agreement"), with certain lender parties thereto (the "Lenders") and 405 Redfish LLC, as administrative agent thereunder (the "Agent"). In connection with the Loan Agreement, Opco executed that certain Promissory Note dated February 22, 2019 in favor of the Agent, as payee, with a principal amount of

$13,691,489.13. The Loan Agreement provides for a term loan commitment up to $25,000,000.00. As of the Petition Date, at least $14,196,107.50 is outstanding under the Loan Agreement.

12. On March 2, 2020, the Agent notified the Debtors of the occurrence and continuance of an Event of Default.

13. Additionally, in connection with the Loan Agreement, Holdco also entered into a Guaranty and Pledge Agreement, dated February 22, 2019, in favor of the Agent, as secured party, pledging its membership interest in Opco to the Agent for the benefit of the Lenders.

## RELIEF REQUESTED

14. The Debtors generate accounts, general intangibles, instruments, monies, payments and other rights arising out of their business, which likely constitute cash collateral of the Lenders within the meaning of section 363 of the Bankruptcy Code (the "Cash Collateral"). Without the use of the Cash Collateral, the Debtors do not have sufficient available working capital with which to operate their business and pay their employees. As a result, access to Cash Collateral is absolutely critical to the Debtors' continuing survival as going concerns and ability to reorganize. Accordingly, the Debtors have an immediate need to use Cash Collateral to manage and preserve the assets of their estates and to maximize recovery to creditors.

15. By this Motion, the Debtors seek, among other things, the following:

(a) authorization for the Debtors to use Cash Collateral and the granting of adequate protection to the Lenders for, among other things, such use of Cash Collateral and any diminution in value of their interest in Cash Collateral, whether existing on the Petition Date or arising pursuant to the Interim Order;

(b) the scheduling of an emergency interim hearing on the Motion (the "Interim Hearing"), pursuant to Bankruptcy Rule 4001, to consider entry of the Interim Order;

(c) a vacatur of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order;

(d)      the scheduling of a final hearing (the "Final Hearing") to consider entry of a final order authorizing the use of Cash Collateral (the "Final Order") and the grant of adequate protection on a final basis; and

(e)      waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

16.      The Debtors' proposed Interim Budget, containing the Debtors' projected income and operating expenditures through May 31, 2020, annexed to the proposed Interim Order attached hereto. The Debtors will file a full budget with the Court in advance of the Final Hearing on this Motion.

## ARGUMENT AND AUTHORITIES

**A.**      **Adequate Protection and Cash Collateral**

17.      Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral without the consent of the secured party or court approval. *See* 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by the debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. *See* 11 U.S.C. § 363(e).

18.      What constitutes adequate protection must be decided on a case-by-case basis. *In re Energy Partners, Ltd.*, 409 B.R. 211, 236 (Bankr. S.D. Tex. 2009) (citing *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *Fed. Deposit Ins. Corp. v. Mathis (In re Mathis)*, 64 B.R. 279, 284 (N.D. Tex. 1986*); see also United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Associates, Ltd. (In re Timbers of Inwood Forest Associates, Ltd.)*, 793 F.2d 1380, 1397 (5th Cir. 1986), *aff'd*, 484 U.S. 365 (1988); *In re Martin*, 761 F.2d 472 (8th Cir. 1985). The focus of adequate protection is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370 (1988).

19. The Lenders assert liens on the Debtors' Cash Collateral. As adequate protection for the Debtors' use of the Cash Collateral, the Debtors propose to provide the Lenders with the following forms of adequate protections (the "Adequate Protection"), to the extent of any diminution in value of the Lenders' pre-Petition Date security interests in the Debtors' pre-petition collateral, if any:

(a) The Lenders shall be granted a security interest in the Debtors' post-petition assets with the same nature, extent, priority, and validity as the pre-petition security interest held by the Lenders.

(b) The Lenders shall be granted, from and after the Petition Date, replacement liens and security interests in all accounts and inventory acquired by the Debtors after the Petition Date, specifically including all cash proceeds arising from such accounts and inventory acquired by the Debtors after the Petition Date, with the same nature, extent, priority, and validity that any such liens asserted by the Lenders existed on the Petition Date.

(c) As of the Petition Date, said replacement liens and security interests granted to the Lenders shall be valid, perfected, enforceable and effective against the Debtors, their successors and assigns, including any trustee or receiver in this or any superseding chapter 7 case, without any further action by the Debtors or the Lenders and without the execution, delivery, filing or recordation of any promissory notes, financing statements, security agreements or other documents. Notwithstanding the foregoing, the Interim Order shall be deemed a security agreement and may be filed as a financing statement and the Debtors shall execute and deliver such notes, security agreements, assignments, financing statements and other documents that the Lenders shall reasonably request to further evidence the liens and security interests granted hereby.

(d) The Lenders shall have all the rights and remedies of a secured creditor in connection with the liens and security interests granted by the Interim Order in all collateral, except to the extent that such rights and remedies may be affected by the Bankruptcy Code, and otherwise.

(e) The Lenders shall have a superpriority administrative expense claim, with priority under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates of any kind or nature whatsoever, except as set forth herein.

20. The Adequate Protection shall be subordinate only to (i) all accrued and unpaid fees and expenses incurred by the Debtors' professionals and allowed by the Court, (ii) statutory U.S. Trustee fees, and (iii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code appointed in any chapter 7 cases of the Debtors.

21. Here, the proposed Adequate Protection, outlined hereinabove and set forth in the proposed Interim Order attached hereto as Exhibit "A," is sufficient to secure the Debtors' projected use of Cash Collateral because the projected diminution in value, if any, from the use of Cash Collateral is less than the value of the Adequate Protection proposed to the Lenders. In fact, the use of Cash Collateral is itself a form of Adequate Protection as it will serve to allow the Debtors to generate accounts receivable, thereby preserving the value of the Debtors' operations and assets as a going concern.[2]

22. In addition, the Lenders are protected by a significant equity cushion. Ryder Scott estimated Opco's PDP reserves had a PV10 value of $28.2 million as of December 1, 2019, whereas the amount outstanding under the Loan Agreement was approximately $14.2 million as of the Petition Date. Based on the foregoing, the Debtors submit that the Adequate Protection package is appropriate and should be approved.

---

[2] The Debtors' accounts receivable and their proceeds, albeit the Lenders' collateral, are property of the estate. *See* 11 U.S.C. § 541; *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983); *Dewhirst v. Citibank (In re Contractors Equip. Supply Co.)*, 861 F.2d 241, 245 (9th Cir. 1988). As a result, the automatic stay of section 362 prevents the continuing re-direction of the proceeds of accounts receivable and the deprivation of the Debtors' control thereover. *See Whiting Pools*, 462 U.S. at 204 ("The creditor with a secured interest in property included in the estate must look to [section 362(e)] for protection, rather than the nonbankruptcy remedy of possession"); *In re Ramirez*, No. 12-34472, 2014 WL 2522148, at *12 (Bankr. S.D. Tex. June 4, 2014) ("The automatic stay prohibits the continued exercise of control over estate property"); *In re Weidenbenner*, 521 B.R. 74, 79–80 (Bankr. S.D.N.Y. 2014) (in the context of a freeze on a debtor's bank account, "Wells Fargo simply decided to place a freeze on property of the estate and unilaterally determined who was allowed to access it. The Court cannot think of a better example of "control over property of the estate"); *In re Ionosphere Clubs, Inc.*, 123 B.R. 166, 169 (S.D.N.Y. 1991) ("The filing of a bankruptcy petition ordinarily stays all actions by creditors of the debtor, including any action by a secured creditor to take possession of its collateral").

**B.      The Use of Cash Collateral Is Necessary to Preserve Assets of the Estate**

23.     It is essential that the Debtors immediately instill their vendors, customers and employees with confidence in their ability to transition their business smoothly to the chapter 11 process and to operate normally.  The use of Cash Collateral is necessary to continue, among other things, the orderly operation of the Debtors' business, and the maintenance of continued relationships with the Debtors' vendors and customers.  As discussed above, the Debtors operate natural gas wells as well as the Plant, which generated approximately $9.6 million in revenue over the past 12 months.  If denied the use of Cash Collateral, the Debtors will be unable to continue operations and thus, significant value will be destroyed.

**C.      Interim Approval Should Be Granted**

24.     Pursuant to Bankruptcy Rule 4001(b)(2), a final hearing on a motion to use cash collateral may not be commenced before 14 days after service of that motion.  FED. R. BANKR. P. 4001.  The Court may, however, conduct a preliminary hearing before the expiration of that 14-day period and likewise, authorize the use of Cash Collateral, if necessary, to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.  *Id.*  Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3).  Furthermore, the Complex Case Procedures provide that "on motion by the Debtors, a hearing will routinely be conducted within three business days to consider. . . cash collateral use[.]" Complex Case Procedures, ¶ 4.A.

25.     In examining requests under this Bankruptcy Rule, courts apply the same business-judgment standard as is applicable to other business decisions.  *See In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990); *In re N. Bay Gen. Hosp., Inc.*, No. 08-20368 (Bankr.

8

S.D. Tex. July 11, 2008). The Debtors submit that, for the reasons set forth herein, the immediate use of Cash Collateral, on an interim basis, as requested in this Motion is necessary to avert immediate and irreparable harm to the Debtors' business and their estates.

26. The Debtors request that the Court conduct an emergency preliminary hearing on the Motion and authorize the Debtors, from and after the entry of the Interim Order until a Final Hearing on the relief requested herein, to use Cash Collateral, as necessary. Such authorization will ensure that the Debtors maintain ongoing operations and will avoid immediate and irreparable harm and prejudice to their estates and all parties in interest pending the Final Hearing.

27. As noted above, pursuant to Bankruptcy Rules 4001(b)(2), the Debtors respectfully request that the Court set a date for the Final Hearing at the earliest date and time of the Court's convenience that will ensure adequate notice and due process to all parties in interest.

28. The Debtors respectfully request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first-class mail on the Notice Parties (as defined below) and to any other party that has filed a request for notices with this Court and to any Official Committee and its counsel, if a committee is appointed. The Debtors respectfully request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

## CONFERENCE WITH LENDERS

29. Counsel to the Debtors conferred with counsel to the Lenders shortly after these chapter 11 cases were filed regarding Cash Collateral usage. Counsel for the Debtors will confer further with counsel to the Lenders in advance of the hearing on this Motion in an attempt to reach resolution of some, if not all, issues regarding the use of Cash Collateral.

## CHECKLIST

30.     The *Attorney Checklist Concerning Motion and Orders Pertaining to Use of Cash Collateral* in a format conforming to Appendix J of the Complex Case Procedures is attached hereto as Exhibit "B."

## EMERGENCY CONSIDERATION

31.     In accordance with Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion. The Debtors have no outside sources of funding available and must rely on the use of Cash Collateral to continue to operating. Without the use of Cash Collateral, the Debtors will be unable to perform many of the tasks which are necessary to maximize the value of their assets and maintain the viability of their operations. Accordingly, the Debtors request that the Court approve the relief requested in this Motion on an emergency basis.

## NOTICE

32.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Lenders; (c) the holders of the 20 largest unsecured claims against the Debtor; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

33.     No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court (i) enter the form of proposed Interim Order attached hereto as Exhibit "A," granting the relief requested herein, and (ii) grant such other relief as may be just and proper.

10

4817-3865-3115.4

Respectfully submitted this 1st day of May, 2020.

**GRAY REED & McGRAW LLP**

By: */s/ Jason S. Brookner*
    Jason S. Brookner
    Texas Bar No. 24033684
    Paul D. Moak
    Texas Bar No. 00794316
    Lydia R. Webb
    Texas Bar No. 24083758
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email:    jbrookner@grayreed.com
Email:    pmoak@grayreed.com
Email:    lwebb@grayreed.com

**PROPOSED COUNSEL TO THE DEBTORS**

**CERTIFICATE OF SERVICE**

    I do hereby certify that on May 1, 2020, a true and correct copy of the foregoing pleading was served via CM/ECF to all parties authorized to receive electronic notice in these cases.

    */s/ Lydia R. Webb*
    Lydia R. Webb

4817-3865-3115.4