**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BUZZARDS BENCH, LLC and | § | Case No. 20-32391-11 |
| BUZZARDS BENCH HOLDINGS, LLC, | § | |
| | § | Jointly Administered |
| Debtors.[1] | § | |
| | § | |

**DEBTORS' MOTION FOR (I) AN ORDER (A) APPROVING BIDDING
PROCEDURES AND CERTAIN BID PROTECTIONS, (B) SCHEDULING
BID DEADLINE, AUCTION DATE, AND SALE HEARING AND APPROVING
FORM AND MANNER OF NOTICE THEREOF, AND (C) APPROVING CURE
PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF; AND
(II) AN ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE
<u>DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS</u>**

> **THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS MOTION WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Buzzards Bench, LLC ("<u>Opco</u>") and Buzzards Bench Holdings, LLC, the above-captioned

debtors and debtors in possession (collectively, the "<u>Debtors</u>"), for their Motion (the "<u>Motion</u>")

for (i) entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Bidding</u>

<u>Procedures Order</u>"), (a) approving bidding procedures (the "<u>Bidding Procedures</u>") and certain

bidding protections set forth therein to be used for the proposed sale (the "<u>Proposed Sale</u>") of

substantially all of the Debtors' assets (the "<u>Assets</u>"), (b) scheduling the bid deadline, auction date,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number are: Buzzards Bench, LLC (7898) and Buzzards Bench Holdings, LLC (4637).

and sale hearing and approving the form and manner of notice thereof; and (c) approving procedures for the potential assumption and assignment of executory contracts and unexpired leases, the cure of any default pursuant to section 365(b)(1) of the Bankruptcy Code, and the form and manner of notice thereof; and (ii) following a subsequent hearing (the "Sale Hearing"),[2] the entry of an order (the "Sale Order"), substantially in the form attached hereto as **Exhibit B**, (a) approving the sale of the Assets under and pursuant to a purchase and sale agreement (the "PSA"), a draft of which is attached to the Sale Order as **Exhibit 1**, to the successful purchaser (the "Successful Bidder") to be determined at auction (the "Auction"), free and clear of liens, claims and interests, (b) approving the PSA and the obligations incurred by the Successful Bidder thereunder, and (c) granting related relief.  In support of the Motion, the Debtors respectfully represent:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PROCEDURAL HISTORY

4.      On April 30, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

---

[2] As set forth below and in the Bidding Procedures, the Debtors reserve the right to cancel the Sale Hearing if at, or prior to, the Auction, an Alternative Transaction (as defined in the Bidding Procedures) is accepted and will be pursued.

5.      Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors remain in possession of their property and each is managing its business as a debtor in possession.

6.      No trustee, examiner, or official committee has been appointed.

## THE PROPOSED SALE

7.      The Debtors were formed for the specific purpose of acquiring under-managed natural gas properties.  Consistent with its business plan, in February 2019, Opco acquired a historically prolific natural gas field located in Utah—the Buzzards Bench asset (the "Field").  The Field is approximately 20% of the Greater Drunkards Wash complex.  Currently, Opco owns and operates 128 natural gas producing wells across the Field's approximately 47,000 net acres (73 square miles).  Opco additionally owns and operates the Castle Valley Processing Plant, a 150 mmcf per day natural gas processing plant that is critical to Field operations.

8.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Van Levy in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15].

9.      The Court's *Final Order Authorizing Use of Cash, Approving Budget, Granting Replacement Liens* [Docket No. 87] (the "Final Cash Collateral Order") sets forth certain sale milestones (the "Milestones") and other requirements relating to a sale of the Debtors' assets to which the Debtors agreed in conjunction with reaching an agreement for the consensual interim and final use of cash collateral with 405 Redfish LLC ("405 Redfish"), the agent to their prepetition lenders, and the remaining Pre-Petition Secured Parties.  *See* Final Cash Collateral Order ¶ 11.

10.     As contemplated by the PSA, the Proposed Sale of the Assets is subject to a competitive Auction process that will help to ensure maximum value for the Assets will be realized for the Debtors' estates and their creditors.  Accordingly, the Debtors have filed this Motion

3

seeking approval of the Bidding Procedures and, following a subsequent hearing (the Sale Hearing), approval of the Proposed Sale of the Assets to the Successful Bidder.

11.     In compliance with the Milestones, the Debtors have filed a motion seeking to retain The Claro Group, LLC ("Claro") as financial and marketing advisor to assist with the sale of the Assets.  [Docket No. 93].  Once the Bidding Procedures are approved, Claro will work with the Debtors and interested third parties to procure a transaction that maximizes the value of the Assets.

12.     Pursuant to the procedures described below, among other things, potential bidders will receive notice of the Bidding Procedures, will be informed how to qualify as a bidder, and how to submit a qualified bid.  In addition, creditors and other parties in interest will receive reasonable notice of the Sale Hearing to consider the Proposed Sale and have an opportunity to object thereto, and parties will also be afforded reasonable notice and an opportunity to object to the assumption and assignment of executory contracts and unexpired leases, if any, as part of the Proposed Sale.

## **RELIEF REQUESTED**

13.     This Motion seeks relief in two stages.  First, the Debtors seek an order, substantially in the form attached hereto as **Exhibit A**, approving the Bidding Procedures, authorizing the Auction, and scheduling the Sale Hearing.  Second, the Debtors seek an order, substantially in the form attached hereto as **Exhibit B**, approving the Proposed Sale and related transactions at the Sale Hearing.

4818-4473-4397.3

A.      **Proposed Sale Timeline**

14.     The Debtors propose to solicit bids, conduct the Auction, and have a Proposed Sale

approved on the following timeline:[3]

| | |
|---|---|
| Deadline to file initial Cure Notice: | August 11, 2020 |
| Deadline to submit bids (the "Bid Deadline"): | August 31, 2020 at 4:00 p.m. (CT) |
| Deadline to object to any Cure Amount: | August 31, 2020 at 4:00 p.m. (CT) |
| Notifications to Qualified Bidders: | September 3, 2020 |
| Return of Deposit to non-Qualified Bidders: | By September 8, 2020 |
| Auction (if one or more Qualified Bids is received and an Alternative Transaction is not pursued): | September 8, 2020 at 10:00 a.m. (CT) |
| Deadline to object to Sale: | September 9, 2020 at 4:00 p.m. (CT) |
| Deadline to object to assumption and assignment of the Assumed Contracts: | September 9, 2020 at 4:00 p.m. (CT) |
| Deadline to file Assumed Contract Schedule | September 10, 2020 at 4:00 p.m. (CT) |
| Sale Hearing, to approve the results of the Auction: | September 11, 2020 at __:__ _.m. (CT)[4] |

15.     The Debtors believe that the above timeline is reasonable, and otherwise complies

with the Milestones and requirements for the sale process set forth in the Final Cash Collateral

Order.  Claro began its marketing efforts on May 18, 2020.  Thus, by the time the Bid Deadline

arrives, marketing will have been under way for no less than three months, and the proposed

Auction date will be over four months after the Petition Date.  These deadlines are consistent with

deadlines often established for asset sales in other chapter 11 cases.

---

[3] As previously stated and as set forth in the Bidding Procedures, an Alternative Transaction may be subject to the plan and disclosure statement process and timeline, and if the Debtors determine to pursue an Alternative Transaction, the Debtors will not seek approval of a plan or disclosure statement at the Sale Hearing.

[4] If the Debtors ultimately decide to pursue an Alternative Transaction, the Sale Hearing will be cancelled, and the Debtors will promptly file a joint chapter 11 plan and pursue confirmation thereof.

B.     **Bidding Procedures**

16.     The Debtors request that the Court approve the Bidding Procedures, attached to the Bidding Procedures Order as **Exhibit 1**.  The Bidding Procedures are designed to maximize value for the Debtors' estates while ensuring an orderly process.  The Bidding Procedures describe, among other things, the manner in which bidders and bids become "qualified," the receipt and negotiation of bids received, the conduct of any Auction, the ultimate selection of the Successful Bidder, and the Court's approval thereof.  The Bidding Procedures also address the various combinations and permutations that may occur during the process, *to wit*, an all-asset going concern sale, a piecemeal sale of various assets to multiple bidders, and a restructuring pursuant to a joint chapter 11 plan.  To the extent the Debtors decide to pursue an Alternative Transaction, the Sale Hearing, and/or the Auction will be cancelled.

17.     The proposed Bidding Procedures provide, in summary fashion, as follows:[5]

(a)     Sale of Assets or Going Concern Transaction: The Debtors are entertaining bids for a proposed (A)(i) sale of all or a portion of their assets or (ii) going concern sale, or (B) restructuring transaction under a confirmed joint chapter 11 plan of reorganization (a "Alternative Transaction").  The Debtors may enter into one Transaction or several Transactions with multiple parties, depending upon the bids received.

Any Successful Bidder(s) will be obligated to assume the assumed liabilities as may be set forth in any purchase agreement and the Debtors will assume and assign the assumed contracts to the Successful Bidder(s), as may be set forth in any purchase agreement(s) accepted by the Debtors.

(b)     "As Is, Where Is": Any Transaction(s) entered into with the Debtors will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or their estates, except as may be set forth in a purchase agreement(s) with a Successful Bidder(s) or joint chapter 11 plan approved by the Bankruptcy Court.

---

[5] This summary is qualified in its entirety by reference to the provisions of the Bidding Procedures themselves.  In the event of any inconsistencies between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.  Unless otherwise defined, capitalized terms shall have the meanings ascribed to them in the Bidding Procedures.

(c)      Free of Any and All Claims and Interests: Any Transaction entered into with the Debtors will be free and clear of all liens, claims, interests, and encumbrances (collectively, the "Claims and Interests"), with such Claims and Interests attaching to the net proceeds of the sale.

(d)      Participation and Bid Requirements: Any person or entity who wishes to participate in the Bidding Process (a "Potential Bidder") must become a Qualified Bidder as indicated within the Bidding Procedures.

(e)      Due Diligence: Following execution of a Confidentiality Agreement, the Debtors will afford each Potential Bidder an opportunity to perform due diligence with respect to their businesses and assets.  The Debtors have designated Claro to coordinate all reasonable requests for additional information and due diligence access from Potential Bidders about the businesses or the Assets.  After the Bid Deadline, the Debtors and Claro are not required to furnish any information of any kind related to the businesses or the Assets to any person that is not a Qualified Bidder.

(f)      Bid Deadline: A Qualified Bidder (other than a potential Stalking Horse Bidder and the Pre-Petition Secured Parties) who desires to make a bid must deliver written copies of its bid, along with the Required Bid Documents (as defined within the Bidding Procedures) to the Debtors, Claro, 405 Redfish, and any statutory committee at the addresses contained within the Bidding Procedures no later than 4:00 p.m. Central Time on August 31, 2020 (the "Bid Deadline").

(g)      Qualified Bids: Each Pre-Petition Secured Party is deemed to be a Qualified Bidder.  A bid (other than any bid proposed by a potential Stalking Horse Bidder or a Pre-Petition Secured Party) will be deemed a "Qualified Bid" and considered by the Debtors only if the bid:

>       i.       is on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Debtors than, those contained in the PSA;

>       ii.       contains no contingencies of any type, other than Bankruptcy Court approval of the Transaction and any applicable regulatory conditions;

>       iii.       other than any Stalking Horse Bid(s) that may be designated by the Debtors, is not conditioned upon any bid protections (such as a topping fee, termination fee, expense reimbursement, or similar type of payment);

>       iv.       contains the acknowledgements and representations as listed in the Bidding Procedures;

>       v.       includes a list of assumed contracts and assumed liabilities (if any), and a commitment to consummate the Transaction and the assumption of the assumed liabilities (if any) within not more than ten (10) days after entry of an order by the Bankruptcy Court approving such Transaction;

vi.  identifies each regulatory and third-party approval required for the bidder to consummate the Transaction, if any, and the time period within which the bidder expects to receive such regulatory and third-party approvals;

vii.  discloses (i) the identity of the Potential Bidder and each entity participating in connection with the Potential Bidder and the complete terms of such participation, and (ii) any other term sheets and other written or oral understandings between the Potential Bidder and its affiliates on one hand, and any insider (as defined in section 101(31) of the Bankruptcy Code) of the Debtors, on the other;

viii.  is received by the Bid Deadline; and

ix.  contemplates payment in cash, in full, upon the closing of the Transaction (other than a credit bid), unless the Debtors agree otherwise, after consultation with 405 Redfish and any statutory committee that may be appointed.

(h)  <u>Auction</u>: If the Debtors receive more than one Qualified Bid, an auction (the "<u>Auction</u>") will be conducted, upon notice to all Qualified Bidders who have submitted Qualified Bids, at 10:00 a.m. Central Time on September 8, 2020, at the offices of Gray Reed & McGraw LLP, 1300 Post Oak Boulevard, Suite 2000, Houston, Texas 77056, in accordance with the terms of the Bidding Procedures.

(i)  <u>Closing of Auction Selection of Successful Bid:</u>  The Auction will continue until there is only one bid that the Debtors determine, in their business judgment, after consultation with 405 Redfish and any statutory committee, is the highest or otherwise best Qualified Bid for each asset or group of assets (such bid being the "<u>Successful Bid</u>" and the bidder making such bid, the "<u>Successful Bidder</u>").

(j)  <u>Back-Up Bidder</u>.  If there is an Auction, the Qualified Bidder that submits the second highest Bid at the Auction shall be required to serve as the back-up bidder (the "<u>Back-Up Bidder</u>") and keep such Back-Up Bidder's last Bid (the "<u>Back-Up Bid</u>") open and irrevocable until the earlier of (i)(A) if a Proposed Sale, 5:00 p.m. Central Time on the date which is five days after the sale to the Successful Bidder becomes final and non-appealable or (B) if an Alternative Transaction, 5:00 p.m. Central Time on the date which is five days after the Alternative Transaction becomes final and non-appealable; and (ii) the closing of the Transaction with the Successful Bidder (the "<u>Outside Back-Up Date</u>").  If (x) after the Sale Hearing but prior to the Outside Back-Up Date for a Proposed Sale or (y) after the conclusion of the Auction but prior to the Outside Back-up Date for an Alternative Transaction, the Successful Bidder fails to consummate or proceed with the relevant Transaction because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to have the new Successful Bid, and the Debtors will be authorized, without further order of the Bankruptcy Court, to consummate the Transaction with the Back-Up Bidder.  The Debtors will provide notice to 405 Redfish and any statutory committee of any failure by the Successful Bidder to close the Transaction and the election to proceed to close a Transaction with the Back-Up Bidder.

(k)    <u>Right to Credit Bid</u>.  Any creditor that has a valid, perfected, unavoidable, and enforceable security interest (a "<u>Security Interest</u>") in the Debtors' assets (any such creditor, a "<u>Secured Party</u>") may make one or more credit bids for all or any portion of the secured claim(s) held by such Secured Party at the Auction, subject to the requirements of section 363(k) of the Bankruptcy Code (a "<u>Credit Bid</u>").  In order to qualify to Credit Bid, a Secured Party must be a Qualified Bidder and a Credit Bid must qualify as a Qualified Bid.  The Pre-Petition Secured Parties shall be deemed Qualifier Bidders and only 405 Redfish (or its designee) shall be permitted to submit a Credit Bid on behalf of the Pre-Petition Secured Parties.  405 Redfish shall be permitted to submit a Credit Bid at the Auction on a dollar-for-dollar basis in an amount up to the full amount of the outstanding Pre-Petition Secured Obligations and any other secured claim owing to the Pre-Petition Secured Parties at the time of the Auction (as defined in the Final Cash Collateral Order), pursuant to paragraph 14 of the Final Cash Collateral Order.  405 Redfish shall not be required to meet any other requirements for its bid to be a Qualified Bid.

(l)    <u>Jurisdiction</u>:  All bidders will be deemed to have consented to the exclusive jurisdiction of the Bankruptcy Court, consented to the Bankruptcy Court entering final orders and judgments, and waived any right to a jury trial in connection with any and all disputes relating to, arising from, or connected with the Auction, the marketing process, the Transaction, and the construction and enforcement of any purchase agreement.

(m)    If the Debtors choose to move forward with an Alternative Transaction, the Auction and Sale Hearing may be cancelled.

(n)    <u>Reservation of Rights</u>:  Notwithstanding any term to the contrary in the Bidding Procedures, the Debtors, in consultation with 405 Redfish and any statutory committee, reserve the right to: (i) modify the Bidding Procedures at any time; (ii) determine which Qualified Bid, if any, is the highest or otherwise best offer; (iii) reject at any time, any bid that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the PSA; or (c) contrary to the best interests of the Debtors, their estates, and their creditors as determined by the Debtors in their sole discretion; and (iv) pursue a sale or other transaction through a joint chapter 11 plan.

## C.    <u>Stalking Horse and Bid Protections</u>

18.    In the exercise of their business judgment, the Debtors may, without any obligation to do so, select one or more bidders to act as a stalking horse (each being a "<u>Stalking Horse Bidder</u>" with the relevant bid being a "<u>Stalking Horse Bid</u>"), after consultation with 405 Redfish and any statutory committee.  Further, as contemplated by the Bidding Procedures Order, the Debtors will be permitted, but not directed, to incur and pay a break-up fee in an amount not to exceed 3.0% of

the cash component of a Stalking Horse Bid and, in the Debtors' discretion, an expense reimbursement of no more than 0.5% of the total purchase price (together, the "Break-Up Fee").

19.     If the Debtors declare one or more Stalking Horse Bidders, they will promptly file a notice of the same with the Court, along with a copy of the Stalking Horse Bid(s) and the PSA(s) at least 7 days prior to the Bid Deadline.  Parties in interest will have five (5) days to object to the designation of the Stalking Horse Bid and any proposed Break-Up Fee.  Thereafter, if no objection is received or if the Court approves the designation of a Stalking Horse Bidder after considering any objections, the related Break-Up Fee will be paid either upon closing of a sale or sales to a bidder or bidders who are not the Stalking Horse Bidder(s), or following closing of an Alternative Transaction, as set forth below.

**D.      The Sale Notice, Auction, and PSA**

20.     Within three (3) business days after entry of the Bidding Procedures Order, the Debtors will serve copies of the Motion and Bidding Procedures Order, including (i) a copy of the Bidding Procedures attached thereto as **Exhibit 1**, and (ii) the notice of Bid Deadline, Auction, and Sale Hearing, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "Sale Notice") (collectively the "Bid Package").  The Debtors will serve the Bid Package by first class U.S.  mail, postage prepaid, upon the following (collectively, the "Bid Notice Parties"): (a) all potential buyers previously identified or solicited by the Debtors or Claro and any additional parties who have previously expressed an interest to the Debtors or Claro in potentially acquiring the Assets, (b) other potentially interested parties identified by the Debtors or their advisors; (c) the U.S. Trustee; (d) counsel to any statutory committee; (e) counsel to 405 Redfish; (f) counterparties to the Debtors' executory contracts and unexpired leases; (g) any parties that have asserted a lien or security interest against or any other interest in, including, without limitation, preferential

purchase rights or rights of first refusal on, any of the Debtors' assets; (h) any taxing authorities related to the Debtors' assets; and (g) all parties who have requested notice in this case.[6]

21.     At the Auction, to the extent a Stalking Horse Bidder has been named, the initial overbid must exceed such Stalking Horse Bid by the amount of the Break-Up Fee plus an additional $100,000.  Thereafter, or in the event no Stalking Horse Bidder has been named, the minimum bidding increment (the "Subsequent Bids" and each a "Subsequent Bid") shall be $100,000.  The amount of the Subsequent Bids may be increased or decreased by the Debtors, in their discretion, in consultation with 405 Redfish and any statutory committee.  The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bid with full knowledge and written confirmation of the then-existing highest bid or bids.

22.     Attached to the Sale Order as **Exhibit 1** is a general form PSA for use by potential bidders.  The Debtors seek approval of the PSA, subject to such modifications as may be submitted by potential bidders and accepted by the Debtors, after consultation with 405 Redfish and any statutory committee in connection with the Proposed Sale and in the exercise of the Debtors' business judgment.

**E.     Potential Assumed Contracts and Cure Notice**

23.     The Debtors may seek to assume and assign to the Successful Bidder certain executory contracts and unexpired leases to be designated by the Successful Bidder.  On or before August 11, 2020, the Debtors propose to file with the Court an initial schedule of executory contracts and unexpired leases that may be assumed and assigned as part of the Proposed Sale (the

---

[6] All such entities will also be served by electronic mail to the extent the Debtors and Claro have electronic mail addresses for such parties.

"Potential Assumed Contracts").  Concurrently therewith, the Debtors will serve a cure notice substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "Cure Notice") upon each counterparty to the Potential Assumed Contracts (each, a "Counterparty"). The Cure Notice shall identify the amounts, if any, that the Debtors believe are owed to each Counterparty to a Potential Assumed Contract in order to cure any defaults that may exist under such contract (the "Cure Amount").  Pursuant to the Bidding Procedures Order, the Cure Notice shall also state the applicable date, time, and place of the Auction and Sale Hearing, and provide the date and time by which any objection (the "Cure Objection") to (i) the assumption and assignment of the applicable Potential Assumed Contract on the basis of lack of adequate assurance of future performance under section 365(b)(1) or (ii) the Cure Amount must be filed and served by the Counterparty.  If a contract or lease is assumed and assigned under the Proposed Sale, then unless a Counterparty properly and timely files and serves a Cure Objection pursuant to the Cure Notice, the Counterparty will receive payment from the Successful Bidder of the Cure Amount (if any) as set forth in the Cure Notice consistent with the terms and procedures set forth in the PSA approved by the Court.

24.     Prior to the commencement of the Sale Hearing, the Debtors shall file with the Court a final schedule (the "Assumed Contract Schedule") of executory contracts and unexpired leases elected to be assumed by the Successful Bidder (the "Assumed Contracts").  At the Sale Hearing, the Debtors shall seek authority to assume and assign the Assumed Contracts to the Successful Bidder effective as of the closing of the Proposed Sale; *provided, however*, that the Successful Bidder may remove or add any executory contract or unexpired lease to or from the Assumed Contract Schedule at any time up to the closing of the Proposed Sale.  The Counterparty

to any such addition or removal will be notified by written notice via first class U.S. mail by no later than two (2) business days from such determination.

25.     If at any time after service of the Cure Notice and before closing of the proposed Sale the Debtors identify additional Potential Assumed Contracts not included in the initial Cure Notice, the Debtors will serve a supplemental Cure Notice on the counterparties to the additional Potential Assumed Contracts and such counterparties will have until the later of (i) 4:00 p.m. Central Time on September 9, 2020; or (ii) ten (10) days from service of the supplemental Cure Notice to object inclusion of the additional Potential Assumed Contract on the Assumed Contract Schedule.

## ARGUMENT AND AUTHORITIES

**A.      The Bidding Procedures are appropriate and ensure that the bidding process is fair, reasonable, and will yield the maximum value to the Debtors and their estates, creditors, stakeholders, and other parties in interest.**

26.     The Debtors respectfully submit that the Bidding Procedures meet the standard set forth in section 363(b) for sales outside of the ordinary course of a debtor's business.  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).

27.     This Court's power under Bankruptcy Code section 363 is supplemented by section 105(a), which provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  As set forth below, the Debtors submit that they have satisfied the requirements of sections 105 and 363 as those sections have been construed by courts in the Fifth Circuit.

28.     To approve a sale under section 363(b)(1) of the Bankruptcy Code, the Fifth Circuit requires a debtor to show that the decision to sell the property outside of the ordinary course of

business was based on the debtor's business judgment.  *See Inst'l Creditors of Cont'l Airlines, Inc. v Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986); *In re San Jacinto Glass Indus., Inc*., 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988).  A bankruptcy court is to give deference to the business judgment of the trustee or debtor in possession when it deems the sale to be appropriate.  *See Esposito v. Title Ins. Co. of Pa.* (*In re Fernwood*), 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa. 1987); *see also In re Rodriguez*, 353 B.R. 144, 149 (Bankr. N.D. Tex. 2006).

29.     Once the Debtors articulate a valid business justification, their decision to sell property out of the ordinary course of business enjoys a strong presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company."  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  Therefore, any party objecting to the Debtors' proposed asset sale must make a showing of "bad faith, self-interest, or gross negligence."  *See id*. at 656; *see also In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) ("In the absence of a showing of bad faith or an abuse of business discretion," a court will not alter a debtor's business judgment while analyzing a debtor's decision to assume/reject contracts).

30.     The paramount goal in any proposed sale of property of a debtor's estate is to maximize the proceeds received by the estate.  *See Cadle Co. v. Moore (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010) (debtor in possession "has the duty to maximize the value of the estate"); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985) (same).  Thus, it is appropriate to approve bidding procedures that benefit a debtor's estate by maximizing the value of the debtor's assets.  *See In re TM Vill., Ltd.*, No. 18-32770, 2019 WL 1004571, at *10 (Bankr.

14

N.D. Tex. Feb. 28, 2019) ("As long as the sale appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to sell should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code") (quoting *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985)); *In re Edwards*, 228 B.R. 552, 561 (Bankr. N.D. Pa. 1998); *In re Tex. Rangers Baseball Partners*, 431 B.R. 706, 711 (Bankr. N.D. Tex. 2010); *Integrated Res. Inc.*, 147 B.R. at 659.

31.     The Debtors have sound business justifications for pursuing a Transaction and seeking approval of the Bidding Procedures at this time.  The Debtors believe that the Bidding Procedures will set the parameters by which the value of the Debtors' assets and the overall transaction value may be established and tested.  The Bidding Procedures will thus create a competitive and fair bidding process and increase the likelihood that the value of the Assets are maximized.

32.     The Debtors also believe that the Bidding Procedures will promote active bidding from seriously interested parties, and will dispel any doubt as to the highest and best offer reasonably available for the Debtors' assets (or the businesses, to the extent there is a going concern transaction or an Alternative Transaction).  The Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who demonstrate an ability to close the Proposed Sale.  The Debtors believe that the Bidding Procedures will encourage bidding, are consistent with other procedures previously approved by courts in this and other districts, and are appropriate under the relevant legal standards.  *See generally, e.g.*, *In re Walker County Hospital Corp.*, Case No. 19-36300 (Bankr. S.D. Tex. Nov. 14, 2019) [Docket No. 67]; *In re Epic Companies, LLC*, Case No. 19-34752

(Bankr. S.D. Tex. Oct. 3, 2019) [Docket No. 227]; *In re Lockwood Holdings, Inc.*, Case No. 18-30197 (Bankr. S.D. Tex. Jul. 17, 2018) [Docket No. 513].

    **B.**    **The form and manner of notice of the Bidding Procedures, the Auction, and the Sale Hearing are reasonable, adequate, and appropriate.**

    33.    The Debtors request that the Court schedule two hearings in connection with this Motion: first, a hearing to consider and approve the Bidding Procedures and schedule the Auction, Sale Hearing, and related deadlines; and second, the Sale Hearing itself.

    34.    As set forth above, the Debtors will serve the Bid Package and Sale Notice on the Bid Notice Parties within three (3) days of entry of the Bidding Procedures Order.  The date proposed for the Sale Hearing — September 11, 2020 — complies with Bankruptcy Rules 2002(a)(2), 6004, and 6006(c), as such date will be more than twenty one (21) days after service of the Bid Package.  Further, the materials in the Bid Package will comply with Bankruptcy Rules 2002(c)(1) and 6004(f)(1), as the same will contain the information required by such Bankruptcy Rules.  As a result, the Debtors respectfully submit that the Bid Package and the Sale Notice satisfy the notice and information requirements of Bankruptcy Rules 2002, 6004, and 6006(c), and section 363 of the Bankruptcy Code, and that such notice is good and sufficient in that no other or further notice is required.

    **C.**    **The Break-Up Fee is reasonable and necessary to ensure maximum value for the Debtors' assets.**

    35.    As has been demonstrated over the years, obtaining a stalking horse bidder is often key to a successful, efficient, and value-maximizing sale process.  The presence of a stalking horse sets a floor for the auction and encourages bidding, thereby maximizing the seller's return.  To receive this benefit, however, the Debtors need to be able to compensate a Stalking Horse Bidder for the risk it takes by (i) entering into an agreement that is subject to higher and better offers without any assurances that its transaction will ultimately be consummated, (ii) exposing its bid to

the market, and (iii) standing by its bid commitment while the marketing and sale process plays itself out.  The Debtors, therefore, request that the Court approve the Break-Up Fee, in the event that the Debtors declare one or more Stalking Horse Bidders.

36.     Break-up fees and other bid protections are a normal and customary—and sometimes necessary—component of sales outside the ordinary course.  *Integrated Res.*, 147 B.R. at 659-60 ("[B]ecause the directors of a corporation have a duty to encourage bidding, break-up fees can be *necessary* to discharge the directors' duties to maximize value") (emphasis in original); *See, e.g., In re Lockwood Holdings, Inc.*, Case No. 18-30197 (DRJ) (Bankr. S.D. Tex. July 17, 2018) (approving break-up fee of 3% for potential stalking horse(s) to be named later); *In re Stone Energy Corp.*, Case No 16-26390 (MI) (Bankr. S.D. Tex. Jan. 18, 2017) [Docket No. 316] (approving a break-up fee in the amount of $10,800,00, or 3% of the purchase price); *In re CXM, Inc.,* 307 B.R. 94, 104 (Bankr. N.D. Ill. 2004) (approving a $200,000 break-up fee protecting stalking horse bidder); *In re Outboard Marine Corp.*, Case No. 00-37405-EIK-11 (Bankr. N.D. Ill. Jan. 10, 2001) [Docket No. 217] (authorizing payment of a 3% break-up fee to potential bidders); *In re 995 Fifth Ave. Assoc., L.P.*, 96 B.R. 24, 28-29 (Bankr. S.D.N.Y. 1989) (finding that $500,000 break-up fee was not unreasonable absent evidence that it chilled the bidding).

37.     To warrant approval of break-up fees and expenses, the Fifth Circuit in *Asarco* required a showing that the requested fees and expenses are supported by a sound business justification.  *Asarco, Inc., v. Elliot Mgmt. (In re Asarco, LLC)*, 650 F.3d 593, 597-98, 602-03 n. 9 (5th Cir. 2011) (favoring business judgment standard governing use of assets outside of ordinary course of business, rather than the standard for administrative expenses, in assessing propriety of fees and expenses incurred by bidders).

38.     Here, the proposed Break-Up Fee of up to 3.0% is well within the range of reasonableness and supported by a sound business justification.  Generally speaking, courts have found break-up fees to be reasonable, and approved the same, ranging up to approximately five percent (5%) of the consideration to be received.  *See Integrated Res.*, 147 B.R. at 662 (noting expert testimony that 3.3% is industry average for break-up fees); *see also, e.g.*, *In re Stone Energy Corp.*, No. 16-36390 (MI) (Bankr. S.D. Tex. Jan. 18, 2017) (approving 3% break-up fee); *In re UGHS Senior Living, Inc.*, No. 15-80399 (DRJ) (Bankr. S.D. Tex. Nov. 24, 2015) (approving 3% break-up fee and 1% expense reimbursement); *In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y., Apr. 8, 2004) (approving break-up fee equal to 5% of the purchase price); *In re TransCom USA Mgmt Co., L.P.*, No. 01-35158 (KKB) (Bankr. S.D. Tex., Feb. 12, 2002) (approving a break-up fee of more than 3.6% of the purchase price for the assets).

39.     If one or more Stalking Horse Bids is submitted and accepted by the Debtors, the Break-Up Fee will be beneficial to the Debtors' estates and creditors, as such Stalking Horse Bid(s) will set a floor for further bidding, and establish a metric against which all other bids may be measured.  The Debtors, in their business judgment, believe it is reasonable and appropriate to provide the requested Break-Up Fee, which is consistent with other break-up fees approved in this District, as set forth above.

**D.     The PSA is typical, customary, and reasonable and entering into the PSA is an exercise of the Debtors' reasonable business judgment.**

40.     The PSA attached hereto is a basic form of purchase and sale agreement for a sale of the Debtors' assets.  It provides a base from which interested parties may work when formulating the terms of their respective bids, and is a form with which the Debtors are comfortable and which the Debtors believe is fair to both the Debtors and prospective bidders.

41.     The Debtors further believe, and respectfully submit, that the terms of the PSA are typical, customary, and reasonable under the circumstances, in the exercise of their business judgment.  Given that there is no current Stalking Horse Bidder, however, the Debtors presume that modifications will be submitted not only by potential Stalking Horse Bidders, but also by general bidders.  The Debtors thus request authorization to accept such modifications and edits to the form of PSA as may be submitted by potential bidders and as the Debtors may agree to in their discretion and business judgment, after consultation with 405 Redfish and any statutory committee.

**E.      Any Proposed Sale Should be Approved Free and Clear of Liens, Claims, Interests, and Encumbrances.**

42.     Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any lien, claim, interest, or encumbrance in such property if, among other things:

> (1)      applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)      such entity consents;
>
> (3)      such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
>
> (4)      such interest is in bona fide dispute; or
>
> (5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

43.     Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice for approval of the proposed sale.  *See, e.g., In re Partners Oil Co.*, 216 B.R. 399, 401 (Bankr. S.D. Tex. 1998) (allowing a sale free and clear of liens when just one of the subsections of 363(f) were met); *In re Collins*, 180 B.R. 447, 449-50 (Bankr. E.D. Va. 1995)

("Section 363(f) is phrased in the disjunctive, such that only one of the enumerated conditions must be met in order for the Court to approve the proposed sale"); *Scherer v. Fed. Nat'l Mortg. Ass'n (In re Terrace Chalet Apts., Ltd.)*, 159 B.R. 821, 827 (N.D. Ill. 1993) (sale extinguishes liens under section 363(f) as long as one of the five specified exceptions applies).

44.     Section 363(f) permits the Proposed Sale to proceed free and clear of all liens, claims, interests, and encumbrances, except for any liabilities specifically assumed by the Successful Bidder.  Each lien, claim, interest, or encumbrance that is not the result of an assumed liability satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code. Indeed, the Debtors believe that none of the Pre-Petition Secured Parties will oppose the underlying Sale at the Sale Hearing, because they will either be paid in full in cash from the sale proceeds (or will be paid an agreed upon amount), or one of the Pre-Petition Secured Parties will be the Successful Bidder.  Assuming such, any proposed sales of the Pre-Petition Secured Parties' collateral free and clear of liens, claims, mortgages, encumbrances, and other interests would satisfy the requirements of section 363(f)(2) of the Bankruptcy Code.  To the extent the Debtors seek to sell any Assets on which an entity other than one of the Pre-Petition Secured Parties has a lien, such party will receive the Sale Notice and will have an opportunity to object.  Further, to the extent one of the Pre-Petition Secured Parties or any other entity with a lien on any assets to be sold has an objection to the Sale, but the Debtors nonetheless decide to proceed with the Proposed Sale over such objection, the Debtors will present appropriate evidence and lay the necessary foundation at the Sale Hearing to support approval of the Proposed Sale.

45.     The Debtors further submit that any lien, claim, interest, or encumbrance will be adequately protected by attachment to the net proceeds of the Sale, in the same order of priority as existed prior to the Petition Date, and all parties' rights to object to such Sale are preserved.

Accordingly, the Debtors request that the Proposed Sale to the Successful Bidder be free and clear of all liens, claims, interests, and encumbrances, with such liens, claims, and encumbrances to attach to the proceeds of the Proposed Sale.

**F.      The Stalking Horse, or the Successful Bidder, is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code, and the Proposed Sale should be deemed not avoidable pursuant to section 363(n) of the Bankruptcy Code.**

46.      Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

47.      While the Bankruptcy Code does not define "good faith," the Fifth Circuit has held that a good faith purchaser is one who "purchases the assets for value, in good faith, and without notice of adverse claims." *Hardage v. Herring Nat'l Bank,* 837 F.2d 1319, 1323 (5th Cir. 1988) (quoting *Willemain v. Kivitz (In re Willemain),* 764 F.2d 1019, 1023 (4th Cir. 1985)). Furthermore, the good faith status of a purchaser can be destroyed with evidence of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *TMT Procurement Corp. v. Vantage Drilling Co.* (*In re TMT Procurement Corp.*), 764 F.3d 512, 521 (5th Cir. 2014).

48.      The Debtors submit, and will present evidence at the Sale Hearing that, the Proposed Sale is an arms' length transaction, in which the Successful Bidder and the Debtors at all times acted in good faith.  In connection with approval of the proposed Sale, the Debtors request that the Court make a finding that the Successful Bidder is a good faith purchaser and entitled to the protections of section 363(m) of the Bankruptcy Code.

4818-4473-4397.3

**G.      The assumption, assignment, and cure procedures relating to the Assumed Contracts are appropriate and should be approved.**

49.      In connection with the Proposed Sale, the Debtors seek authority to assume and assign the Assumed Contracts (if any) to the Successful Bidder.  In the event the Debtors seek to assume and assign any contracts or leases, the Debtors will file and serve the Cure Notice no later than August 11, 2020, subject to amendment and supplementation prior to the Sale Hearing.  The Debtors request that objections, if any, to the Cure Amount be filed by no later than August 31, 2020, and objections, if any, to the assumption and assignment of the Assumed Contracts on any other grounds be filed by no later than September 9, 2020.  If an objection to the assumption and assignment of the Assumed Contracts or to the Cure Notice and any Cure Amount cannot be resolved consensually among the parties, then the Debtors request that the Court set a hearing to determine such matters as soon thereafter as is practicable, with notice only to the objecting party and those parties who have filed a notice of appearance.  The Cure Amounts set forth in the Cure Notice shall be binding on all parties unless an objection thereto is timely filed and served.  The failure to timely file and serve an objection shall be deemed consent to the assumption and assignment of the Assumed Contracts and to the Cure Amount, and any and all objections thereto shall be deemed forever released and waived as of the date of the Sale Hearing.

50.      Section 365(f)(2) of the Bankruptcy Code provides that:

> [t]he trustee may assign an executory contract or unexpired lease of the debtors only if –
>
> (A)      the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)      adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

51.      Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease

of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court approval of a debtor's decision to assume or reject executory contracts or unexpired leases of nonresidential real property is whether the debtor's reasonable business judgment supports assumption or rejection. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *see also Tex. Health Enters. Inc. v. Lytle Nursing Home (In re Tex. Health Enters. Inc.)*, 72 F. App'x 122, 127 (5th Cir. 2003) ("[T]he bankruptcy code makes it clear that it is the choice of the debtor-in-possession, and not the bankruptcy court, to assume or reject an executory contract"); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162 (Bankr D. Del. 2006).

52.     Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor:

> (b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)     cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B)     compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)     provides adequate assurance of future performance under such contract or lease.

53.     Courts give the phrase "adequate assurance of future performance" in section 365(b)(1) a "practical, pragmatic construction." *See, e.g., Appeal of Ill. Inv. Tr. v. Allied Waste Indus., Inc. (In re Res. Tech. Corp.)*, 624 F.3d 376, 383-84 (7th Cir. 2010) (adequate assurance required showing that performance was more likely to occur than not); *EBG Midtown S. Corp. v. McLaren/Hart Envtl Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992) (the presence of adequate assurance should be "determined under the facts of each particular case"); *In re Fifth Ave. Originals*, 32 B.R. 648, 652 (Bankr. S.D.N.Y. 1983) (holding that adequate

assurance was furnished on two separate grounds). The phrase "adequate" assurance is not synonymous with "total" assurances. *See, e.g., In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance"); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D. N.J. 1988) ("the required assurance will fall considerably short of an absolute guarantee of performance"); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) ("[I]t does not mean absolute insurance that the debtor will thrive and make a profit").

54.     To the extent the Successful Bidder desires the Debtors to assume and assign some or all of the Debtors' executory contracts or unexpired leases, the Debtors have determined that such assumption and assignment is an exercise of sound business judgment and is in the best interests of the Debtors, their estates, and their creditors. To the extent that any defaults exist under any Assumed Contract, the Debtors will cure, or make provisions for the cure of, any such default, as set forth in the Cure Notice.

## NOTICE

55.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to 405 Redfish, LLC, as administrative agent to the Debtors; (c) the holders of the 20 largest unsecured claims against the Debtors; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## WAIVER OF BANKRUPTCY RULE 6004(h)

56.     In light of the Milestones and the need to comply therewith, as well as the need and desire to move swiftly towards closing of the sale, the Debtors request that the Court waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h).

4818-4473-4397.3

## NO PRIOR REQUEST

57.     No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court: (A) enter an Order (i) approving the Bidding Procedures and the Break-Up Fee; (ii) scheduling the Auction, Sale Hearing, and associated deadlines; and (iii) approving the form and manner of notice of the Auction and the Sale Hearing and certain bidding protections as described herein; (B) enter a second Order, at the Sale Hearing (to the extent a Sale Hearing occurs), (x) authorizing and approving the Proposed Sale free and clear of liens, claims, interests, and encumbrances to the Successful Bidder, (y) approving the assumption and assignment of the Assumed Contracts, and (z) approving the assumption of the assumed liabilities by the Successful Bidder; and (C) grant such other and further relief as may be just and proper.

Respectfully submitted this 29th day of May, 2020.

**GRAY REED & McGRAW LLP**

By:  */s/ Jason S. Brookner*
    Jason S. Brookner
    Texas Bar No. 24033684
    Paul D. Moak
    Texas Bar No. 00794316
    Lydia R. Webb
    Texas Bar No. 24083758
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:     jbrookner@grayreed.com
           pmoak@grayreed.com
           lwebb@grayreed.com

**PROPOSED COUNSEL TO THE DEBTORS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 29th day of May, 2020, he caused a true and correct copy of the foregoing document to be served via CM/ECF to all parties authorized to receive electronic notice in this case.

_/s/ Jason S. Brookner_____
Jason S. Brookner

4818-4473-4397.3